UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| COMMERCIAL FLOORING | § |
| SYSTEM, INC. | § |
| *Plaintiff* | § |
| | § Case No. 1:19-CV-1012-RP-SH |
| v. | § |
| | § |
| HUNT CONSTRUCTION GROUP, | § |
| INC. | § |
| *Defendant* | § |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO: THE HONORABLE ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

Before the Court are Defendant Hunt Construction Group, Inc.'s Motion to Compel Arbitration and, Alternatively, to Dismiss, filed on January 23, 2020 (Dkt. 7), with the parties' responsive briefing (Dkts. 9, 14); Plaintiffs' Opposed Motion to Supplement Its Response (Dkt. 23), with the parties' responsive briefing (Dkts. 24, 26); and Defendant's Motion for Leave to File a Reply to Plaintiff's Supplemental Response, (Dkt. 27), filed in the event that the Court allows CFS to supplement its response. The District Court referred the above motions to the undersigned Magistrate Judge for Report and Recommendation on the Motion to Compel Arbitration and disposition of the motions for supplemental briefing, pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas ("Local Rules").

## I. Background

This lawsuit arises from the construction of the Fairmont Hotel in Austin, Texas. Dkt. 1-3. Defendant Hunt Construction Group, Inc. ("Hunt") entered into a contract to serve as the general contractor for the project and subcontracted with Plaintiff Commercial Flooring System, Inc.

("CFS") to install certain flooring and carpet and do other work. *Id.* ¶¶ 9-10. CFS alleges that it completed the work as agreed but Hunt owes an outstanding payment of $93,720.91. *Id.* ¶¶ 12-13.

On September 11, 2019, CFS filed this action in the 126th Judicial District Court in Travis County, Texas, asserting claims for breach of contract, quantum meruit, violation of the Prompt Payment Act (TEX. PROP. CODE §28.001 et seq.), suit on a sworn account, and violation of the Texas Trust Fund Act (TEX. PROP. CODE § 162.001 et. seq.). *Id.* ¶¶ 17-45. Hunt removed the action to this Court on October 17, 2019. Dkt. 1.

On January 23, 2020, Hunt filed its Motion to Compel Arbitration and, Alternatively, to Dismiss, asking this Court to enforce the arbitration clause in the parties' contract ("the Subcontract"). Dkt. 7. Hunt argues that the Court must dismiss this case for lack of subject-matter jurisdiction under Rule 12(b)(1) because the parties' dispute is subject to an arbitration clause. In the alternative, Hunt moves to dismiss the claims for failure to state a claim under Rule 12(b)(6) because CFS has not alleged that it fulfilled certain conditions precedent to filing a lawsuit under the Subcontract.

Both parties filed responsive briefing. Dkts. 9, 14. On January 29, 2020, ninety days after its timely response, CFS filed a Motion to Supplement its Response. Dkt. 23. Hunt filed a brief in opposition and CFS filed a reply. Dkts. 24, 26. On February 7, 2020, Hunt filed a Motion for Leave to File a Reply to Plaintiff's Supplemental Response in the event that the Court grants CFS's Motion to Supplement. Dkt. 27. The Court first addresses the Motion to Compel Arbitration.

## II. THE MOTION TO COMPEL ARBITRATION

### A. Legal Standards

#### 1. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject-matter jurisdiction as a defense to suit. FED. R. CIV. P. 12(b)(1). Federal district courts are courts of limited

jurisdiction and may exercise only jurisdiction expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case or claim for lack of subject-matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the claims. *See Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).

In ruling on a Rule 12(b)(1) motion, the court may consider: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citation omitted). The trial court is "free to weigh the evidence and satisfy itself" that subject-matter jurisdiction exists. *MDPhysicians & Assocs., Inc. v. State Bd. Of Ins.*, 957 F.2d 178, 181 (5th Cir. 1992) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). In the Fifth Circuit, "a district court lacks subject matter jurisdiction over a case and should dismiss it pursuant to Federal Rule of Civil Procedure 12(b)(1) when the parties' dispute is subject to binding arbitration." *Gilbert v. Donahoe*, 751 F.3d 303, 306 (5th Cir. 2014).

### 2. Arbitration

Under the Federal Arbitration Act ("FAA"), parties to a contract may agree that an arbitrator rather than a court will resolve disputes arising out of the contract. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019). The FAA provides that written agreements to arbitrate controversies arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The FAA was designed to overrule the judiciary's long-standing refusal to enforce

agreements to arbitrate and to place such agreements upon the same footing as other contracts." *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989) (cleaned up). Thus, the FAA establishes "a liberal federal policy favoring arbitration agreements" and "requires courts to enforce agreements to arbitrate according to their terms." *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 97 (2012).

Although there is a strong federal policy favoring arbitration, it "does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003). The FAA "does not require parties to arbitrate when they have not agreed to do so." *Volt*, 489 U.S. at 478. Rather, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960). The FAA "simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt*, 489 U.S. at 478.

When considering a motion to compel arbitration, courts apply a two-step framework. First, the court must determine "whether the parties entered into *any arbitration agreement at all*." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). "This first step is a question of contract formation only—did the parties form a valid agreement to arbitrate some set of claims." *IQ Prods. Co. v. WD-40 Co.*, 871 F.3d 344, 348 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 2620 (2018). This initial question is for the court. *Kubala*, 830 F.3d at 201. To determine whether there is a valid agreement to arbitrate, courts "apply ordinary state-law principles that govern the formation of contracts." *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996). Under Texas law,[1] a binding contract requires: "(1) an offer; (2) an acceptance in strict compliance with the

---

[1] The parties do not dispute that Texas law applies in this case. *See* Dkt. 7; Dkt. 9 at 5.

terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding." *In re Capco Energy, Inc.*, 669 F.3d 274, 279-80 (5th Cir. 2012).

If the court finds that there is a valid agreement to arbitrate, it proceeds to the second question: whether the claim at issue is covered by the arbitration agreement. *IQ Prods.*, 871 F.3d at 348. In the second step, the court must determine "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Webb*, 89 F.3d at 258 (5th Cir. 1996) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)). This second question usually is for the court, unless the arbitration clause contains a valid delegation clause for an arbitrator to determine whether the claim falls within the arbitration agreement. *Kubala*, 830 F.3d at 202.

The party seeking to compel arbitration must prove the existence of an agreement to arbitrate by a preponderance of the evidence. *Grant v. Houser*, 469 F. App'x. 310, 315 (5th Cir. 2012). Once the court determines that there is a valid agreement to arbitrate, the strong federal policy favoring the enforcement of the arbitration agreements applies, and all ambiguities must be resolved in favor of arbitration. *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004). As the Supreme Court has stated: "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). Because of the strong presumption in favor of arbitration, the party opposing arbitration bears the burden to demonstrate either that the agreement is invalid or that the claims are outside of the agreement's scope. *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004).

## B. Whether Hunt and CFS Entered Into An Arbitration Agreement

The parties dispute only the first element of the two-step inquiry: whether they formed a valid agreement to arbitrate. CFS does not dispute that its claims would be covered by the arbitration agreement if the agreement is valid.

Hunt argues that the Subcontract unambiguously grants Hunt the right to choose arbitration as the forum to resolve any dispute between the parties. Dkt. 7 at 6. Section 34.3 of the Subcontract provides the arbitration provision:

> ***Hunt must have the sole and exclusive right to determine whether any dispute***, controversy or claim arising out of or relating to this Subcontract, or breach thereof, ***shall be submitted to a court of law or arbitrated*** under the auspices of the American Arbitration Association in accordance with its Construction Industry Arbitration Rules. . . . The Subcontractor must make a written request to Hunt to determine whether the dispute shall be submitted to a court or to arbitration. . . . The Subcontractor waives any and all rights to contest Hunt's selection of forum.

Dkt. 7-1, § 34.3 (emphasis added). Hunt notes that this Court enforced an identical provision to compel arbitration in a separate case between Hunt and another subcontractor, which asserted identical causes of action. *Id.* at 8-9 (citing *Architectural Concepts, LLC v. Hunt Constr. Grp., Inc.*, No. 1:19-cv-600-JRN (W.D. Tex. Jun. 10, 2019) (Dkt. 19)).

CFS disagrees that the Subcontract provides for mandatory arbitration. CFS argues that "arbitration is merely an option following the exhaustion of procedures set forth in Section 34.2 of the Subcontract." Dkt. 9 at 5. That section requires Hunt to respond within thirty days if CFS submits a written claim for dispute resolution:

> If the Subcontractor has a dispute with Hunt regarding the application or interpretation of any provision of this Subcontract or the breach thereof, the Subcontractor shall . . . submit its claim, in writing, to Hunt attaching all supporting documentation. . . . ***Within thirty (30) days after receiving the Subcontractor's written claim and all requested documentation and information, Hunt shall respond with its position and proposed resolution of the dispute***.

6

> Should the Subcontractor reject Hunt's proposed resolution, the Subcontractor shall proceed [to submit a written request for Hunt determine whether the dispute should be submitted to a court or arbitration under Section §34.3]. ***As a condition precedent to initiating any court or arbitration proceeding as provided for below, the Subcontractor must first comply fully with the provisions set forth herein***.

Dkt. 7-1, § 34.2 (emphasis added). CFS argues that "Hunt's ability to elect arbitration has terminated because Hunt did not comply with Section 34.2 of the Subcontract." Dkt. 9 at 5.[2] CFS further contends that if Hunt were not required to respond in writing under Section 34.2 before selecting a forum under Section 34.3, the entirety of Section 34 would be "illusory" because it would allow Hunt to unilaterally disregard one of the provisions. *Id.*

1. **Whether the Agreement to Arbitrate is Illusory**

Under Texas law, "though a mutual agreement to arbitrate claims is sufficient consideration to support an arbitration agreement, the agreement is illusory where one party has the unrestrained unilateral authority to terminate its obligation to arbitrate." *Nelson v. Watch House Int'l, L.L.C.*, 815 F.3d 190, 193 (5th Cir. 2016) (quoting *In re 24R, Inc.*, 324 S.W.3d 564, 566 (Tex. 2010)). The Texas Supreme Court has explained that "[a]n arbitration clause is not illusory unless one party can avoid its promise to arbitrate by amending the provision or terminating it altogether." *In re 24R*, 324 S.W.3d at 567. By this definition, the arbitration clause here is not illusory because it does not grant Hunt a unilateral ability to amend or terminate the provision. Instead, the clause permits Hunt to select one of two choices agreed between the parties by the terms of the contract.

---

[2] CFS makes no showing that it has complied with its obligation to submit a written claim under Section 34.2. Dkt. 14 at 2.

CFS relies on cases involving contract provisions that granted one party the ability to amend or terminate terms unilaterally, which is not the situation here.[3] CFS does not identify any provision granting Hunt the unilateral ability to amend or terminate the arbitration agreement. Because CFS and Hunt assented to the Subcontract and its terms do not grant Hunt the unilateral ability to amend or terminate the arbitration agreement, the arbitration agreement here is not illusory. Because CFS offers no other grounds to find otherwise, the Court concludes that the parties entered into a valid arbitration agreement.

2. **Whether Failure to Comply With a Condition Precedent Voids An Arbitration Agreement**

Although CFS does not detail its argument on this issue or provide any supporting authority, the core of its argument is that Hunt failed to satisfy a condition precedent to exercising its right to select a forum. *See* Dkt. 9 at 5 ("Hunt's ability to elect arbitration has terminated because Hunt did not comply with Section 34.2 of the Subcontract."). In effect, this issue pertains to the second part of the inquiry: whether the claim at issue is covered by the arbitration agreement.

The Supreme Court has explained that although a gateway dispute about whether the parties are bound by a given arbitration clause raises a "question of arbitrability" for a court to decide,

---

[3] *See* Dkt. 9 at 5-6 (citing *Nelson*, 815 F.3d at 196 (holding that an arbitration agreement was illusory because it granted an employer the ability to make unilateral changes to the agreement, including termination of the entire agreement, effective immediately upon notice to employees); *Henry & Sons Constr. Co. v. Campos*, 510 S.W.3d 689, 693 (Tex. App. 2016) ("If an employer can unilaterally modify or terminate the purported agreement, without prior notice to an employee, that agreement is based upon an illusory promise and thus not enforceable."); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223 (Tex. 2003) (finding an arbitration agreement ambiguous where the court could not determine whether an employment agreement's provision granting the employer a unilateral right to terminate "personnel policies" applied to an arbitration agreement contained in the same document); *In re 24R*, 324 S.W.3d at 566 (Tex. 2010) (finding arbitration agreement was not illusory where the employer "d[id] not retain any right within the arbitration agreement to modify or abolish its terms"); *In re Polymerica, LLC*, 296 S.W.3d 74, 76 (Tex. 2009) ("Because Global cannot avoid its promise to arbitrate by amending the provision or terminating it altogether, the Dispute Resolution Plan is not illusory." (cleaned up)); *In re Dillard Dep't Stores, Inc.*, 186 S.W.3d 514, 516 (Tex. 2006) ("The arbitration agreement . . . do[es] not provide [the employer] any right to unilaterally modify the agreement. For that reason, and because both parties agreed to and signed the agreement, the agreement is not illusory and is binding on [the employee].")).

"procedural" questions which grow out of the dispute and bear on its final disposition presumptively are for an arbitrator to decide. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). A condition precedent to arbitration is a question for an arbitrator. *Id.*; *see also Dealer Comput. Servs., Inc. v. Old Colony Motors, Inc.*, 588 F.3d 884, 888 (5th Cir. 2009) (stating that "conditions precedent to arbitration are procedural issues left to the discretion of the arbitrators" and applying this principle to a condition precedent requiring payment of arbitration fees).

Here, the Subcontract expressly refers to Section 34.2 as a "condition precedent." Dkt. 7-1 § 34.2. CFS has not shown that compliance with conditions precedent is outside the scope of the arbitration agreement. The Court finds that the question of whether the parties have satisfied the conditions precedent for Hunt to elect arbitration is a "procedural question" for the arbitrator.[4]

## C. Conclusion as to Arbitration

Hunt has established that the parties entered into an arbitration agreement, and CFS has not demonstrated that the agreement is invalid or that its claims are outside of its scope. Accordingly, the undersigned recommends that the District Court grant Hunt's Motion to Compel Arbitration.

Although Section 3 of the FAA directs district courts to stay a case pending arbitration, this court is bound by Fifth Circuit precedent "which states that dismissal is appropriate 'when all of the issues raised in the district court must be submitted to arbitration.'" *Adam Techs. Int'l S.A. de C.V. v. Sutherland Glob. Servs., Inc.*, 729 F.3d 443, 447 (5th Cir. 2013) (quoting *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992)); *see also Griggs v. S.G.E. Mgmt.*,

---

[4] Even if the Court were to find that satisfaction of the condition precedent was a "gateway" question of arbitrability for the court, this Court sees no grounds to depart from the reasoning in *Architectural Concepts*, which concerned an identical arbitration provision and an identical set of causes of action against Hunt. The Court granted Hunt's motion to compel arbitration: "[T]he agreement fails to specify what is to happen if Hunt does not respond within its 30-day window. Plaintiff would have the Court interpret Hunt's alleged noncompliance with §34.2 as a waiver of Hunt's right to elect arbitration, but that interpretation is not supported by the contract's terms. At worst, Hunt's alleged noncompliance forces the parties to endure inefficiency in commencing formal resolution of the claims." Slip op. at 3.

*L.L.C.*, 905 F.3d 835, 839 (5th Cir. 2018) ("Some circuits have held that district courts must stay a case when all claims are submitted to arbitration, but this circuit allows district courts to dismiss such claims outright."). Because the parties do not dispute that all of CFS's claims in this lawsuit would be governed by the arbitration agreement at issue, the Court recommends that the District Court dismiss CFS's claim with prejudice.[5]

### III. CFS'S MOTION TO SUPPLEMENT ITS RESPONSE

Courts typically require "good cause" to file a late or supplemental response. *Morrison v. Chilton Prof'l Auto., Inc.*, 984 F. Supp. 1018, 1019 (W.D. Tex. 1997). For example, courts in this district have allowed late filings where a motion "promise[d] to narrow and clarify issues in this dispute." *Texas Taco Cabana, L.P. v. Taco Cabana of New Mexico*, 304 F. Supp. 2d 903, 907 (W.D. Tex. 2003). CFS, however, makes no showing of good cause and offers no reason for its request to file a supplemental response. *See* Dkt. 23. CFS states: "Plaintiff requests this leave in order to call the court's attention to additional relevant facts and decisions which it believes are instructive and asks that the Court give them due consideration in rendering its decision." *Id.* at 1.

Having reviewed the attached supplemental response, the Court finds that all of the legal authorities and arguments contained in the supplement were available to CFS at the time that it filed its original Response. *See* Dkt. 23-1. CFS has not given any reason why it could not have included this briefing with the original Response. Because the Court find that CFS has not shown good cause to file a supplement to its Response, the Motion to Supplement its Response is denied. The Court accordingly dismisses Hunt's Motion for Leave to File a Reply to Plaintiff's Supplemental Response as moot.

---

[5] Because the Court recommends that the District Court grant the motion to compel arbitration, the Court does not reach Hunt's alternative grounds for dismissal under Rule 12(b)(6).

## IV. RECOMMENDATION AND ORDER

Based on the foregoing, the undersigned **RECOMMENDS** that the District Court **GRANT** Hunt's Motion to Compel Arbitration (Dkt. 7) and **DISMISS** CFS's claims **WITH PREJUDICE**.

The undersigned **FURTHER ORDERS** that CFS's Motion to Supplement Its Response (Dkt. 23) is **DENIED**. Hunt's Motion for Leave to File a Reply to Plaintiff's Supplemental Response (Dkt. 27) is **DISMISSED AS MOOT**.

**IT IS FURTHER ORDERED** that this case be removed from the Magistrate Court's docket and returned to the docket of the Honorable Robert Pitman.

## V. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on March 30, 2020.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE